NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>VINCENT P. FALCI,<br><br>Defendant. | Cr. No. 17-228<br><br>**OPINION** |

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter comes before the Court upon the Motion for Compassionate Release under the First Step Act filed by Defendant Vincent P. Falci ("Defendant"). (ECF No. 103.) Defendant requests either a reduction of his sentence to time-served or, in the alternative, modification of his sentence to supervised release with the condition of home confinement. (Mot. at 1, ECF No. 103.) The Government opposes. (ECF No. 106.) The Court has decided the Motion upon the written submissions of the parties and without oral argument. For the reasons stated below, Defendant's Motion is denied.

## BACKGROUND

Defendant engaged in a decade-long Ponzi scheme in which he effected the loss of millions of dollars from close friends and family members. (Superseding Indictment ¶¶ 1–3, ECF No. 43.) On December 13, 2018, a jury found Defendant guilty of four counts of securities and wire fraud. (Jury Verdict, ECF No. 83.) On May 22, 2019, this Court sentenced Defendant to 180 months' imprisonment followed by three years of supervised release. (J. at 1–3, ECF No. 95.)

Defendant has been serving his sentence at FCI Fort Dix. (Mot. at 1.) Defendant's projected release date is March 7, 2032. (Reiser Decl., Attach. 2, ECF No. 106-1.)

On April 27, 2020, Defendant filed the present Motion for Compassionate Release under the First Step Act ("FSA"), 18 U.S.C. § 3582(c)(1)(A) in light of the current COVID-19 pandemic. (Mot. at 1–2.) Defendant, a sixty-year-old male, asserts that he has medical conditions that put him at high risk of serious health consequences should he contract COVID-19, including "hypertension, high-tri-glycerides, diverticulosis, diverticulitis, and chronic obesity." (*Id*. at 3.) Defendant has also had his gallbladder removed and colon reconstructed, and has been a heavy smoker for forty years. (*Id*.) Defendant further asserts that the conditions at FCI Fort Dix create "an unreasonable risk of exposure to COVID-19" and do not provide "the necessary supplies for personal and environmental hygiene necessary to protect against contraction of the virus." (*Id*. at 5.) On May 7, 2020, Defendant filed a Motion to Expedite his Motion for Compassionate Release. (ECF No. 104.)

Defendant states that he filed a request with the Warden of FCI Fort Dix seeking release due to COVID-19 on April 6, 2020. (*Id.* at 1–2.) Defendant then filed a second request with the Warden on April 13, 2020 because he was concerned that his first request lacked specificity. (Mot. to Expedite at 1, ECF No. 104.)[1] On April 27, 2020, Defendant received a response from the Warden's Office, which confirmed that Defendant had "requested a Compassionate Release/RIS consideration." (Warden's Response, Ex. A, Mot. to Expedite.) However, the Warden's Office noted that there are specific categories for compassionate release with differing

---

[1] The Government has attached Defendant's request to the Warden, dated April 14, 2020, as an exhibit to its Opposition. (Ex. A, ECF No. 106-2.) In his request, Defendant asks the Warden to file a motion on his behalf due to his "age, health factors including but not limited to hypertension and obesity," and the fact that he is a non-violent offender with no prior criminal history. (*Id*.)

2

requirements, and that Defendant had failed to "indicate which category [he] wished to be considered under." (*Id.*) The Warden denied Defendant's request and instructed him to re-submit his request with "one specific category" or "appeal the decision through the Administrative Remedy process." (*Id.*) Defendant has not indicated whether he has re-submitted his request or appealed the Warden's decision.

      On May 20, 2020, the Government filed an Opposition to Defendant's Motion for Compassionate Release, arguing that Defendant has failed to establish "extraordinary and compelling reasons" to warrant a reduction in his sentence. (Opp'n at 17–20, ECF No. 106.) The Government provides a Declaration from James Reiser, a Case Management Coordinator at FCI Fort Dix, which details several measures the Bureau of Prisons ("BOP") has taken to protect the health of inmates during the COVID-19 pandemic. (Reiser Decl. ¶ 21.) These measures include, but are not limited to, providing face coverings for inmates and staff, screening newly admitted inmates, placing symptomatic inmates in isolation, and restricting nonessential contractors and visits to facilities. (*Id.*) The Declaration also notes that, as of May 19, 2020, FCI Fort Dix had twenty-two inmates who had tested positive for COVID-19 and twenty-seven inmates who had recently recovered. (*Id.* ¶ 22.)

      The Government also provides Defendant's medical records from the BOP. (BOP Records, Ex. C, ECF No. 113.) These records confirm Defendant's reported hypertension and history of smoking, and state that Defendant had his gallbladder removed in 2008 and his colon reconstructed in 2016. (*Id.* at 3, 18.) The records also indicate that Defendant had a Body Mass Index ("BMI") of 30.8 as of January 10, 2020. (*Id.* at 2.) An entry from July 8, 2019 stated that Defendant "has a 6% risk of heart disease in 10 years" (*id.* at 18), whereas an entry from January 10, 2020 found that Defendant has a 12.6% risk of heart disease in 10 years (*id.* at 3).

On June 8, 2020, Defendant filed a Reply, in which he asserts that FCI Fort Dix has failed to implement the majority of the BOP's preventative measures with regards to COVID-19. (Reply at 3–7, ECF No. 112.) Defendant's Motion for Compassionate Release is presently before the Court.

## LEGAL STANDARDS

**I.      First Step Act**

Under the First Step Act, a court may modify a sentence once it has been imposed for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i). The statute provides in relevant part:

> (c) Modification of an imposed term of imprisonment. The court may not modify a term of imprisonment once it has been imposed except that—
>
>     (1)    In any case—
>
>         (A)    the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>             (i)    extraordinary and compelling reasons warrant such a reduction . . . .

§ 3582(c). A defendant seeking a modification of a sentence under the FSA must (i) satisfy the procedural exhaustion requirement of the FSA and (ii) demonstrate that extraordinary and compelling reasons exist to modify the sentence. § 3582(c)(1)(A).

4

## DISCUSSION

**I.      Exhaustion of Administrative Remedies**

The Government does not oppose Defendant's Motion on failure to exhaust grounds, although the Government notes that the current "set of circumstances may not strictly satisfy the exhaustion requirement under 18 U.S.C. § 3582(c)(1)(A)." (Opp'n at 13 n.6.) Still, the Court must review whether Defendant has exhausted his administrative remedies before assessing the merits of his Motion. *See United States v. Raia*, 954 F.3d 594 (3d Cir. 2020) (finding that it would be futile to remand the defendant's motion for compassionate release to the district court because the defendant had failed to exhaust his administrative remedies); *see also United States v. Epstein*, 2020 WL 1808616, at *4 (D.N.J. Apr. 9, 2020) ("[T]he FSA does not provide this Court with the authority to excuse Defendant's failure to exhaust his administrative remedies or to waive the 30-day waiting period.").

Defendant states that he filed requests with the Warden of FCI Fort Dix on both April 6, 2020 and April 14, 2020. (Mot. to Expedite at 1.) Because Defendant concedes that his April 6, 2020 request may have been inadequate (*id.* at 1–2), the Court considers April 14, 2020 to be the operative date that activates the thirty-day period under § 3582(c)(1)(A).[2] Since thirty days have passed since April 14, 2020, the exhaustion requirement has likely been satisfied. *See Epstein*, 2020 WL 1808616 at *4 ("[U]nder the [FSA], the longest period of time that Defendant will need to wait before filing his motion is 30 days."). However, the Warden's response on April 27, 2020 found Defendant's request to be deficient for failure to indicate "which category [he] wished to be considered under." (Warden's Response, Ex. A.) These circumstances raise the

---

[2] The Government also notes that it could not find any record of the April 6, 2020 request. (Opp'n at 8.)

question of whether a Defendant can satisfy the FSA's exhaustion requirement by filing a deficient request with the BOP. Upon review of Defendant's April 14, 2020 request, the Court finds that Defendant provided the BOP with adequate information as to his grounds for seeking compassionate release, and therefore the exhaustion requirement under § 3582(c)(1)(A) is satisfied.

## II.     Section 3553(a) Factors

Before considering whether extraordinary and compelling reasons warrant a reduction in Defendant's sentence, the Court must first "consider[ ] the factors set forth in section 3553(a) to the extent that they are applicable." § 3581(c)(1)(A). Those factors include, among other things, the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense; and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a).

Defendant's underlying conviction was a non-violent offense, and he has no criminal history other than the present offense. While these factors generally weigh in favor of release, *see United States v. Alexander*, 2020 WL 2507778, at *5 (D.N.J. May 15, 2020), the circumstances of Defendant's crimes were particularly serious and involved a high level of deception: for over ten years, Defendant falsely portrayed himself as an experienced investment advisor and stole over $22 million from seniors, first responders, firefighters, and law enforcement associations. (Sentencing Tr. 17:14–18, ECF No. 97; Opp'n at 25.) Several of these victims had a close relationship with Defendant and lost their entire life savings due to Defendant's fraudulent scheme. (Sentencing Tr. 20:14–23:6; 27:1–28:24, 30:20–31:15; 32:13–33:10.) By the time of Defendant's arrest in 2016, Defendant had either lost or spent the vast

majority of this money, such that the victims have not been compensated for their significant losses. (*Id.* 16:8–18:18.) After careful consideration, the Court imposed a sentence of 180 months' imprisonment, which was below the Sentencing Guidelines' range of 262 to 327 months. (*Id.* 45:4–48:5; J. at 2.) To now reduce this sentence even further, after Defendant has only served one year of his sentence, would ignore the seriousness of the offense and create an "unwarranted sentence disparit[y] among defendants with similar records." § 3553(a)(6); *cf. Durante v. United States*, 2020 WL 2520280, at *2 (D.N.J. May 18, 2020) ("[I]n light of [the defendant's] extraordinary culpability, and the fact that he received a sentence remarkably below the guidelines range, he is not entitled to any further reduction of his sentence"). Accordingly, the § 3553(a) factors do not warrant a reduction in Defendant's sentence.

**III.    Extraordinary and Compelling Reasons**

Congress directed the Sentencing Commission to define the term "extraordinary and compelling reasons." *See* 28 U.S.C. § 994(t). The Sentencing Commission has defined that term as it relates to the BOP's discretion under the previous version of § 3582(c)(1)(A), but it has not updated its Policy Statement since the passage of the First Step Act. *Alexander*, 2020 WL 2507778, at *3; U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13, Application Note 1 (U.S. Sentencing Comm'n 2018). Accordingly, "the Policy Statement provides useful guidance for district courts in assessing a defendant's eligibility for compassionate release, but it 'does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3852(c)(1)(A).'" *Alexander*, 2020 WL 2507778, at *3 (quoting *United States v. Rodriguez*, 2020 WL 1627331, at *4 (E.D. Pa. Apr. 1, 2020)).

The U.S. Sentencing Commission's Policy Statement provides that a defendant may show extraordinary and compelling reasons for compassionate release based on (A) the medical

condition of the defendant, (B) the age of the defendant, (C) the defendant's family circumstances, or (D) for "other reasons." U.S.S.G. § 1B1.13, Application Note 1. Relevant to Defendant's motion, a defendant may show extraordinary and compelling reasons for release based on a medical condition where

    (i)     The defendant is suffering from a terminal illness . . .
    (ii)    The defendant is–
           I. suffering from a serious physical or medical condition,
           II. suffering from a serious functional or cognitive impairment, or
           III. experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

§ 1B1.13, Application Note 1.A. To seek compassionate release based on the age of the defendant, the defendant must be at least sixty-five years old. § 1B1.13, Application Note 1.B.

    A.    *Defendant's Medical Conditions*

Defendant asserts that his underlying medical conditions place him at high-risk of serious complications should he contract COVID-19. (Mot. at 2–3; Reply at 9–11.) Defendant cites to his obesity, hypertension, diverticulosis, diverticulitis, history of smoking, gallbladder removal, colon reconstruction, and age. (*Id.*) Of these conditions, the Centers for Disease Control and Prevention ("CDC") has only identified severe obesity and pulmonary hypertension as illnesses that may put individuals at high risk for severe illness from COVID-19. *Groups at Higher Risk for Severe Illness*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last updated May 14, 2020). According to the BOP's medical records, Defendant's BMI as of January 10, 2020 was 30.8 (BOP Records at 2), which does not meet the threshold of "severe obesity" that the CDC has determined to be a high-risk factor. *Groups at Higher Risk for Severe Illness*, CDC (defining severe obesity as "a body mass index (BMI) of 40 or above"). Additionally, the medical records show that although Defendant

8

suffers from hypertension, he is successfully managing this condition with medication and his risk of cardiovascular disease is still relatively low. (BOP Records at 3, 18.)[3] There is no indication that Defendant suffers from pulmonary hypertension or any other "serious heart condition" that the CDC has identified as a high-risk factor. As for Defendant's other medical conditions, Defendant provides no support to show that these conditions increase the risk of complications from COVID-19. Although Defendant was a regular smoker for many years, there is no indication that he suffers from a chronic lung disease. Furthermore, Defendant's age is not considered a high-risk factor. *Groups at Higher Risk for Severe Illness*, CDC (finding that adults 65 years and older are at high risk for complications from COVID-19).

Other courts have denied compassionate release to prisoners who are of similar age and have similar medical conditions to Defendant. *See Alexander*, 2020 WL 2507778, at *4 (denying a motion for compassionate release where the defendant suffered from hypertension and obesity but medical records showed the BOP was "adequately managing [his] medical care"); *see also United States v. Hammond*, 2020 WL 2126783, at *5 (W.D. Pa. May 5, 2020) (denying motion for compassionate release where defendant was a 56-year old man with hypertension); *Durante*, 2020 WL 2520280, at *2 (denying motion for compassionate release where defendant was a 66-

---

[3] A July 8, 2019 entry states:

> As per the Coronary Heart Disease Risk Calculator by the Medical College of Wisconsin . . . [Defendant] has a 6% risk of heart disease in 10 years. [Defendant] has hypertension which was diagnosed in 2009. Presently he is ordered Amlodipine 5mg QAM and HCTZ 12.5 mg QAM. He reports that he is compliant with this medication regimen and, he denies experiencing any adverse effects from it. He denies having any chest pain or shortness of breath.

(Medical Records at 18.) Still, a January 10, 2020 entry states that "[a]ccording to BOP risk assessment guidelines, inmate has a 12.6% 10-year ASCVD," which is considerably higher than what was recorded previously. (*Id.* at 3.)

9

year old man with a limited record of hypertension). Defendant claims that courts have granted compassionate release to prisoners with similar health conditions and provides a lengthy list of cases for reference. (Reply at 19; Ex. F, ECF No. 112.) However, the vast majority of these cases involved defendants who were either older than Defendant or suffered from more serious medical conditions, such as diabetes, kidney disease, pulmonary hypertension, or chronic lung disease. The few cases in which the defendant had similar medical conditions to Defendant are readily distinguishable because in each of those cases, the defendant had already served a substantial portion of his sentence. *See, e.g.*, *United States v. Pena*, 2020 WL 2301199, at *4–5 (S.D.N.Y. May 8, 2020) (granting release where the defendant had served two-thirds of his sentence, was eligible for release within one year, and had demonstrated rehabilitation while in prison); *United States v. Soto*, 2020 WL 2104787, at *2–3 (D. Mass. May 1, 2020) (granting release where the defendant had served 75% of his six-month sentence); *United States v. Ullings*, 2020 WL 2394096, at *5 (N.D. Ga. May 12, 2020) (granting release where the defendant served more than half of her eight-month sentence). Therefore, while Defendant's conditions may heighten his risk of complications from COVID-19, these conditions are not severe enough to warrant his release, especially in light of the fact that he has only served one year of his fifteen-year sentence.

      B.    *Conditions at FCI Fort Dix*

Defendant contends that the increased risk of contracting COVID-19 at FCI Fort Dix is an extraordinary and compelling reason for a reduction of his sentence. (Mot. at 5–8.) While the Court finds it concerning that there are still active COVID-19 cases at FCI Fort Dix, the Court recognizes that the BOP has undertaken several mitigation measures to protect these inmates, as documented in the Government's Opposition and the Reiser Declaration. (Opp'n at 3–4, 19–20;

Reiser Decl. ¶ 21.) Defendant, however, alleges several ways in which FCI Fort Dix has failed to implement the BOP's mitigation measures, including the failure of some staff members to wear masks, the lack of procedures for staggering or isolating bathroom use, inadequate sanitation, and the housing of inmates in twelve-person rooms. (Reply at 4–6.) Several of these allegations, if true, are indeed a cause for concern. Nevertheless, because Defendant has not demonstrated a sufficiently heightened medical risk with respect to COVID-19, his concerns regarding the potential to contract COVID-19 are not unique among the FCI Fort Dix population. As the Third Circuit recently held, the mere existence of "COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *Raia*, 954 F.3d at 597; *see also Durante*, 2020 WL 2520280, at *4 ("The Third Circuit has thus made clear that the possibility that Covid-19 may spread to [the defendant's] jail unit cannot, without more, justify compassionate release.").

  C. *Length of Sentence and Rehabilitation*

Some district courts have also considered the length of the defendant's remaining sentence when determining whether there are extraordinary and compelling reasons under § 3582(c)(1)(A). For example, in *United States v. Rodriguez*, the court considered that defendant was a year and a half away from completing his seventeen-year sentence and that he had demonstrated rehabilitation while in prison as factors weighing in favor of compassionate release. 2020 WL 1627331, at *11 (recognizing that although "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason," rehabilitation could be considered in combination with other factors).

Defendant has only served one year of his fifteen-year sentence and has presented no evidence of rehabilitation to this Court. This factor, in combination with the nature of

11

Defendant's crimes and the insufficient evidence of a serious underlying medical condition warrant a denial of Defendant's Motion for Compassionate Release.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Compassionate Release (ECF No. 103) is denied, and Defendant's Motion to Expedite (ECF No. 104) is moot. An appropriate Order will follow.

Date: June 22, 2020                              */s/ Anne E. Thompson*
                                                                ANNE E. THOMPSON, U.S.D.J.